Opinion issued June 22, 2023



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NOS. 01-22-00881-CR**
**01-22-00884-CR**
**01-22-00885-CR**
**01-22-00886-CR**

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**STEVEN LANE SKARRITT, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1695879, 1695881, 1731638, 1731640**

---

**MEMORANDUM OPINION**

The right to be free from unreasonable government intrusion into one's own

home is a fundamental liberty protected by the Fourth Amendment of the United

States Constitution and its Texas equivalent.[1]  This is a core tenet of American freedom.  In this case, the sole question before the Court is whether an affidavit supporting a warrant to search a residence meets the required constitutional threshold, and establishes probable cause, to justify the search.

Steven Lane Skarritt was charged with the offenses of (1) engaging in organized criminal activity,[2] (2) money laundering,[3] (3) possession with intent to deliver a controlled substance, namely, methamphetamine, weighing more than four grams and less than 200 grams,[4] and (4) possession with intent to deliver a controlled substance, namely, heroin, weighing at least four grams but less than 200 grams.[5] Before trial began, Skarritt filed a motion to suppress evidence obtained during a search of his residence.

Skarritt maintained that the search of his residence violated state and federal law[6] because the search warrant did not establish probable cause.  After an

---

[1]     U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

[2]     *See* TEX. PENAL CODE § 71.02.  Trial court case number 1731638 is appellate cause number 01-22-00881-CR.

[3]     *See id.* § 34.02. Trial court case number 1731640 is appellate cause number 01-22-00884-CR.

[4]     *See* TEX. HEALTH & SAFETY CODE §§ 481.103, 481.113.  Trial court case number 1695881 is appellate cause number 01-22-00885-CR.

[5]     *See id*. §§ 481.102, 481.112. Trial court case number 1695879 is appellate cause number 01-22-00886-CR.

[6]     *See* U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9; TEX. CODE CRIM. PROC. art. 38.23(a).

evidentiary hearing, the trial court granted Skarritt's motion to suppress. The State

now challenges that ruling.[7] We affirm.

## Background

On October 28, 2020, a magistrate issued a warrant authorizing a search of

Skarritt's residence in Katy, Texas. Texas Department of Public Safety ("DPS")

Special Agent M. Moore authored the affidavit supporting the search warrant. The

entirety of Officer Moore's affidavit is set forth as follows:

> . . . . I have reason to believe and do believe that within the residence located at [address], Katy, Harris County, Texas 77450 ["Skarritt's residence"] will be located evidence of the offense of Engaging in Organized criminal activity (TPC 71.02) by committing the offense of Theft $30,000–$150,000 (TPC 31.03) committed pursuant to a continuing course of conduct on or about the dates of July May [sic] 06, 2020 continuing through October 28, 2020.

> . . . . On May 28, 2020, [Harris County Constable Precinct 1] Deputy J. Bowden[] contacted me about assisting him with a multi-agency investigation into the theft and resale of tools and other merchandise from Home Depot and other stores. The basic scheme involves a group of shoplifters who sell the stolen goods to an individual who then resells the goods to another individual who, in turn, sells the goods to the public through various online platforms. I learned from [Bowden] that the items were being stolen from Home Depot and other businesses in Colorado and then transported to Katy, Harris County, Texas and delivered to [Skarritt's residence] for online sale. I further learned the initial investigation originated from Home Depot Organized Retail Crime ["HDORC"] Investigations and Thornton Police Department ["TPD"], entities located in the State of Colorado. Below are the facts learned from [TPD] and [HDORC] Investigations.

> I reviewed a report that was prepared by [HDORC] Investigator [T.] Hare and learned that in December 2018 Home Depot Senior Manager

---

[7]     *See* TEX. CODE CRIM. PROC. art. 44.01(a)(5).

of Asset Protection [V.] Rice received information about a suspicious Amazon.com seller known as Painting SBS. The lead indicated that Black & Decker vendor group had been reviewing resellers and determined that Painting SBS was not an authorized reseller of their products, specifically the DeWalt line of tools. I further learned from [Hare's] report that Black & Decker conducted a controlled buy of a DeWalt 20v Max HR HD Impact Drill Driver Kit from Painting SBS via Amazon.com. When Black & Decker received the item, they determined through reviewing their records that the drill was sold to Home Depot around July 6, 2018 and shipped to Home Depot Rapid Distribution Center in Houston, TX on July 20, 2018. I further learned from the report that the drill purchased by Black & Decker was new-in-box and not purchased either second-hand or from Home Depot's Returns Logistics Centers, which indicates that the drill had likely been trafficked through unauthorized channels.

I learned that [Hare] began investigating Painting SBS and found through multiple online sources including but not limited to Facebook, Yelp, and the Better Business Bureau that this business was owned by [Skarritt], the resident and owner of the residence located at [address] Katy, Harris County, Texas 77450. From the report, I learned [Hare] reviewed Skarritt's Amazon.com page and, based on his experience, determined that in light of the specific items listed, the amounts of those items, the frequency of those items being returned and the availability in store, along with the fact that used and reconditioned items sold on Amazon must be represented as such in the list made, it was unlikely that Skarritt was purchasing his merchandise from Home Depot's Returns Logistics Centers and simply reselling it on Amazon.com. [Hare] further discovered that Skarritt had an OfferUp account [identified], which was being used to sell items similarly believed to have been stolen from Home Depot stores.

I learned from [Hare] that [Skarritt] was a subject in an ongoing investigation being conducted by [TPD,] being led by Detective [I.] Ranshaw ["Ranshaw"], an officer with over 17 years of experience as a peace officer who I found to be credible and reliable. I received copies of [Ranshaw's] investigation to review and learned that multiple individuals were believed to be part of the scheme involving the theft and resale of tools and other merchandise.

I reviewed the Colorado police reports in the file that were from [TPD] which began on June 22, 2019. The first report in the file ([TPD]

4

Report: 2019009980) was a shoplifting report wherein the complainant, Chase Stuckey, observed a suspect passing all points of sale with a cart filled with Milwaukee and DeWalt power tools without attempting to pay for the merchandise. The complainant chased the suspect who fled in a white Kia bearing California License[] plate [number]. The report mentions the driver of the vehicle was identified as Shawn Garcia [date of birth]. I further learned that Home Depot Asset Protection Specialist [Gardner] was able to identify the shoplifter as Michael Flores, [date of birth] ["Flores"], from previous shoplifting incidents. [TPD] obtained security video of the incident and filed a to-be arrest warrant [sic] on [Flores]. The investigation was closed on October 23, 2019 after the suspect was arrested pursuant to warrant.

I also reviewed [TPD] Report 2019016438 which was completed by [Ranshaw]. This report was a follow-up on the arrestee [Flores] based on Report 2019009980. I learned from Ranshaw's report that [Flores] had been identified in connection with several other shoplifting cases. [HDORC Investigator B.] Cahill found that these thefts amounted in aggregate to over $46,000 worth of stolen goods. [Ranshaw] was also able to identify a female who was with [Flores] during several shoplifting cases as Tiffany Longwolf ["Longwolf"], [date of birth]. I learned that [Ranshaw] was able to locate Michael Flores and arrest him for his warrant along with several others from the report mentioned above. [Ranshaw] further investigated the case and learned from Steven Gonzales that [Flores] was selling the stolen goods to someone named "Brandon" who lived on Wolff St.

I learned from [Ranshaw] that he was contacted by [HDORC Investigator A.] Foote in regards to a suspect who was listing large quantities of new-in-box Home Depot tools on the resale platform OfferUp. In an affidavit written by [Ranshaw], I learned that the owner of that OfferUp account was Brandon Rose ["Rose"]. I further learned [Ranshaw] did a police records search and found a [Rose], [date of birth], with an address of [address], in Arvada, Colorado. Rose did not own the residence but was renting it.

I further learned from an affidavit written by [Ranshaw] that on April 4, 2020, Westminster Police in Colorado were dispatched to a felony theft case where a silver Kia bearing license plate [number] was the suspect vehicle in the theft. [Ranshaw] notified Westminster Police Department ["WPD"] of information that he had gathered previously throughout his investigation in regards to that silver Kia. I learned from

5

that same affidavit written by [Ranshaw] that he knew this vehicle was of interest because [Ranshaw] noted on April 3, 2020 that the same silver Kia bearing Colorado license plate [number] was under surveillance by [HDORC Investigators] Cahill and [T.] Purse and that they had identified the driver and passenger as [Flores] and [Longwolf], respectively. The vehicle was found to be stolen out of Colorado. I learned from [Ranshaw] that [WPD] went to an apartment and made contact with several people including Jared Mitchell [date of birth]. Mitchell spoke with Officer J. Hall who was employed by the [WPD]. During the interview Mitchell stated that Longwolf and Flores sell large amounts of stolen goods to [Rose] who lives in Arvada, Colorado.

I learned from [Ranshaw] that he conducted surveillance on [Rose's] residence at [address], Arvada Colorado, on April 29, 2020. During this surveillance, Ranshaw observed a silver Kia Sportage pulled up to the residence and the driver exited the vehicle and walked to the residence. I further learned that [Ranshaw] recognized and identified the driver as [Flores] and also recognized [Longwolf] from the prior shoplifting investigations described above. I learned from [Ranshaw] that he observed the back of the silver Kia to have several yellow DeWalt boxes which still had visible anti-theft devices on them.

I reviewed an affidavit for a court order for production of records completed by [Ranshaw]. From that affidavit, I learned that [Rose] was seen via electronic surveillance loading several boxes into a trailer that was parked in his driveway on May 6, 2020. I spoke with [HDORC Investigator] [Bourne] who informed me of a surveillance operation involving [Rose] and the trailer on this date.

[Bourne] informed me that he was contacted by [Cahill] who was conducting surveillance on [Rose's] house and saw that Rose was in possession of a double-axle, enclosed white trailer bearing TX license plate [number]. [Bourne] informed me that it was believed by Denver [HDORC Investigations] that the trailer would be used for delivering various stolen property from Home Depot stores throughout the greater Denver, CO area to somewhere in Texas. [Cahill] ran the license plate on the trailer and told me that he found that it was registered to a [Skarritt] with a registered address of [address] Katy, Harris County, Texas. [HDORC Investigations (Denver)] created a plan to conduct surveillance on [Rose] and any associates when they left with the trailer. I learned from [Bourne] that on Thursday, May 7, 2020 just before midnight, the surveillance observed that Rose finished loading

6

the trailer up with new-in-box items and pulled out of his residence. [Cahill and Purse] followed the trailer and Rose as it drove to Wichita Falls, Texas. When the trailer arrived in Wichita Falls, TX [Bourne] and [HDORC Investigator Murphy] took over surveillance of the trailer and Rose. I learned from [Bourne] that they followed the trailer to [Skarritt's address]. [Bourne] told me that they had enlisted the help of HSI Special Agent R. Skidmore who arranged aerial surveillance over the residence concentrating on the front of the house, especially the driveway. I obtained a copy of the video that was recorded and saw that several new-in-box items were being unloaded from the trailer and taken into the residence, past the point of the curtilage where the packages would leave camera view.

I learned from both [Bourne] and [Ranshaw] that on June 12, 2020, a surveillance team observed [Rose] and another white male, later identified as Reilly Hoffman depart from Rose's residence in Colorado in a Silver Chevrolet Suburban, pulling the white trailer belonging to [Skarritt] after loading the trailer full of power tools and other items suspected of being stolen Home Depot Merchandise. On June 13, I along with [HDORC] investigators watched as the trailer was driven to Skarritt's residence . . . and suspected stolen merchandise was unloaded from the trailer into Skarritt's residence. On June 15, 2020, 1 received confirmation from [Bourne] and [Ranshaw] that Rose and Hoffman had returned to Rose's residence in Arva[d]a, CO, in the silver Chevrolet Suburban towing the white trailer belonging to Skarritt.

Again on July 5, 2020, I received notification from [Bourne] and [Ranshaw] that Rose and Hoffman were traveling from Rose's residence to Texas in a silver Chevrolet Tahoe towing Skarritt's white trailer. I was informed by that based on their internal reports of thefts within the time frame of the transport from Colorado to Texas and observations by the surveillance team, the trailer was believed to contain between $20,000 and $50,000 of stolen Home Depot merchandise. On July 6, 2020, 1 along with other DPS Investigators and [HD] investigators observed Rose and Hoffman arrive at Skarritt's residence . . . and unload a significant number of power tools from the trailer and store them in Skarritt's residence.

I was notified that by [Bourne] and [Ranshaw] that on September 10, 2020, Rose once again travelled from Arvada, CO to Katy, TX towing the trailer belonging to Skarritt which is believed to have contained stolen power tools and other Home Depot merchandise. Upon Rose's

7

arrival at [Skarritt's residence], I conducted visual surveillance and observed that Rose and Hoffman again unloaded a large amount of power tools into Skarritt's residence.

On October 27, 2020, I was notified by [Cahill] and [Ranshaw] that [Rose] and another white male had loaded the trailer belonging to [Skarritt] with a large quantity of new, in box, power tools, believed to be stolen from Colorado Home Depot stores, and that they had begun driving to Texas following their usual established route. Based on previous instances of monitoring [Rose] and his accomplices as they transport the stolen goods to Texas from Colorado, it is estimated that they will arrive at [Skarritt's residence] at approximately 3:00pm on October 28, 2020.

Officer Moore stated in the affidavit that it was his "belief that [Skarritt was] involved in Organized Retail Theft, specifically by purchasing large quantities of stolen new in box merchandise from [Brandon Rose] and reselling it at a discounted price under Manufacturer Suggested Retail Price," and that "evidence relating to this ongoing criminal enterprise" would be located at Skarritt's residence.

Based on Officer Moore's affidavit, a warrant was issued for a search of Skarritt's residence and the seizure of "any and all items constituting evidence of the offense of Engaging in Organized criminal activity . . . by committing the offense of Theft $30,000 – $150,000 . . . that may be found therein," including, but not limited to:

2. Any and all stolen property from the residence, garage, and any other appurtenant structures taken from Home Depot or any other stores specifically including, but not limited to the brands De[W]alt, Makita, Echo, Ryobi, Milwaukee, Ridgid and Bosch power tools.

3.   Any cash money, credit/debit cards, gift cards, or other items that appear to be proceeds of the sale of stolen goods.

4.   Any surveillance footage from any other recording/photographic recording devices located.

5.   Any notes, ledgers, records, receipts or documents relating to any stolen property located within the location to be searched or at any other location.

6.   Any vehicles located at or within the curtilage of the residence that may have been used to store or transport stolen goods.

7.   Any computers, phones, hard drives, USB storage devices, Micro SSD Cards, or any other electronic device(s) capable of recording data, which may be related to the stolen property or contraband, or transactions relating to the disposition/sale of stolen property.

8.   Any and all items tending to indicate ownership including but not limited to receipts, paperwork, mail, photographs, and identifying information or documentation.

9.   Any and all contraband subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

Officers searched Skarritt's residence. They seized numerous boxes of tools and merchandise, computers, cellular telephones, as well as controlled substances that were found in a desk. Skarritt was arrested. During a custodial interrogation, Skarritt explained his business and that his purchases were from Home Depot and other retail sources. He also made allegedly inculpatory statements about the drugs found and seized.

Before trial, Skarritt moved to suppress all the evidence obtained as a result of the search on two grounds. *First*, Skarritt argued that the warrant affidavit

9

provided an insufficient basis for the magistrate to find probable cause. He asserted that Officer Moore's statements were conclusory—that Moore stated only beliefs and suspicions that the items at issue were stolen, without any underlying basis or facts showing that any stolen items were delivered to Skarritt.

*Second*, Skarritt argued that Officer Moore "intentionally, knowingly, or with reckless disregard for the truth omitted material information from his affidavit that vitiate[d] probable cause in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978)."

After conducting an evidentiary hearing, the trial court granted Skarritt's motion to suppress without stating a specific ground. It made findings of fact that include the following:

5. The affidavit contains only conclusory statements that items in a trailer taken to Skarritt's house are "believed" to be stolen without any explanation of the basis of that conclusion.

6. The affidavit relates that Colorado law enforcement, including Detective [I.] Ranshaw of Thornton Police Department, had, through reports from named Home Depot employees in 2019 identified a shoplifter to be "Michael Flores" who was accompanied several times by a "Tiffany Longwolf." Ranshaw informed SA Moore, that an individual named Steven Gonzales that [sic] Flores was selling stolen goods to someone named "Brandon" on Wolff St. No description of who Gonzales is, his history, or credibility, or when he gave this information is included.

7. The affidavit further relates vague information from Detective Ranshaw that an officer from another department, Westminster Police, was told by another source, a "Jared Mitchell" who in April, 2020, told a Westminster (CO) Police Department officer

10

that "Longwolf and Flores sell large amounts of stolen goods to a Brandon Rose who lives in Arvada, Colorado." There is no description of the basis of Mitchell's belief nor any description of his history, nor reasons to find Rose credible.

8. The affidavit then relates that Colorado Detective Ranshaw saw Longwolf in a vehicle at Brandon Rose's house that contained "several" DeWalt boxes "which still had visible antitheft devices on them." The affidavit does not state that these items were seen moved either into Rose's residence or a trailer at any time. It does not state that the anti-theft devices should have been removed, as opposed to merely de-activated, if they had been purchased.

9. The affidavit reports that SA Moore . . . learned from an affidavit of Detective Ranshaw that Brandon Rose was seen by electronic surveillance loading boxes into a trailer on May 6, 2020. SA Moore does not relate the affidavit indicated the items were stolen.

10. The affidavit further reports that SA Moore was informed by [Bourne] that his colleague, [Cahill], conducted surveillance on Rose and observed him load "new-in box items" on May 7, 2020, into a white box frailer registered to Skarritt, and drive it from Colorado to [Skarritt's residence] where it was unloaded. The affidavit does not state the items in the trailer were believed to be stolen or provide any basis to believe they were stolen.

11. The affidavit further reports that on June 12, 2020, SA Moore learned from the same individuals that a "surveillance team" observed Rose and Hoffman pull the white trailer full of suspected stolen merchandise from Colorado to Skarritt's residence . . . , but does not state any basis for the belief that the trailer contained stolen merchandise.

12. The affidavit relates that on July 5, 2020, the same individuals informed SA Moore that [Rose] and a Reilly Hoffman were travelling to Texas towing Skarritt's trailer. The only stated basis for this belief is a vague reference to "thefts within the time frame of the transport from Colorado to Texas and observations by the surveillance team that they believed the trailer contained $20,000 to $50,000 of stolen Home Depot merchandise." The affidavit contains no further information regarding thefts, including by

11

whom, or what observations were made, that supported that belief. The Court finds that the statement that the surveillance team "made observations . . . that they believed the trailer contained" stolen merchandise is entirely subjective.

13. The affidavit further relates that on September 10, 2020, the same individuals informed SA Moore that Rose was again travelling to Texas towing Skarritt's trailer, "which is believed to have contained stolen power tools and other Home Depot merchandise." The affidavit contains no information regarding the basis of that belief.

14. The affidavit further relates that on October 27, 2020, [Cahill] and Detective Ranshaw informed SA Moore that Rose and another white male [were] travelling to Texas towing Skarritt's trailer "with a large quantity of new, in box, power tools, believed to be stolen from Colorado Home Depot stores." The affidavit contains no information regarding the basis of that belief.

15. There is nothing in the affidavit supporting the stated suspicions, beliefs, or contentions, that [] items placed into the trailer or transported to Skarritt's residence . . . at any time were stolen.

. . . .

17. The information in the affidavit regarding a Black & Decker investigation of Skarritt does not relate to theft.[8]

---

[8] Additionally, the trial court found that, at the time of the affidavit, Officer Moore had completed three reports, which the trial admitted into evidence at the hearing. The trial court determined that the reports were not affidavits, were not otherwise sworn, and none contained any factual basis supporting an allegation that the items transported from Rose to Skarritt were stolen. Further, the July 8, 2020 report described surveillance of Rose and Hoffman as they entered numerous Home Depot stores in the Greater Houston area and exited empty-handed or with merchandise. The report states:

> By investigative means, it was determined ROSE and HOFFMAN were purchasing clearance items from the Home Depot Stores. ROSE was believed to be using his (ROSE'S) debit card to purchase the

The trial court also made the following conclusions of law:

1. The Search Warrant Affidavit, on its face, is wholly conclusory and fails to state probable cause.

2. There was no probable cause to believe that the specific items transported from Colorado to Texas were stolen.

3. There was no stated probable cause for searching the desk drawers at [Skarritt's residence].

4. There is no stated probable cause linking the defendant's computers and/or phones and/or other electronic devices to the alleged offense for purposes of a search or a seizure.

## Motion to Suppress Evidence

The State claims in its sole issue that Officer Moore's affidavit established the necessary probable cause to justify a search of Skarritt's residence. According to the State:

The allegations established in the affidavit supporting the warrant established a theft and resale scheme engaged in by Skarritt, Rose and others. The warrant [sic] established a pattern of behavior in trafficking stolen goods from Colorado by Rose to Skarritt; even if not a pattern of behavior, it established at least one instance of theft, transport and receipt of stolen power tools to support probable cause for a warrant.

merchandise. ROSE was possibly using SKARRITT'S tax ID number to apply towards the purchase of the merchandise.

. . . ROSE and HOFFMAN traveled back to SKARRITT'S residence later that evening. . . .

Officer Moore testified that he was "not quite sure which [reports] were attached to" his affidavit and not sure whether the magistrate reviewed any such reports.

13

***Standard of Review***

Generally, we review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). We review the trial court's determination of legal questions and its application of the law to facts that do not turn upon a witness's credibility de novo. *Id*. We afford "almost total deference" to the trial court's "findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor . . . if they are reasonably supported by the record." *Id.*

When a trial court makes explicit findings of fact, as here, we determine whether the evidence, viewed in a light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "Whether we infer the fact findings or consider express findings, we uphold the trial court's ruling under any applicable theory of law supported by the facts of the case." *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013).

While this appeal involves our examination of the trial court's ruling on the motion to suppress, it also "involves our secondary appellate review of the magistrate's probable-cause determination in issuing the search warrant, which is a similar, yet distinct, inquiry." *State v. Crawford*, 463 S.W.3d 923, 928 (Tex. App.— Fort Worth 2015, pet. ref'd).

14

***Probable Cause***

The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. Similarly, the Texas Constitution provides that the "people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches" and that no search warrant shall issue without probable cause. TEX. CONST. art. 1, § 9.

At the core of the Fourth Amendment, and its Texas equivalent, is the fundamental principle "that a magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location." *Foreman v. State*, 613 S.W.3d 160, 163 (Tex. Crim. App. 2020) (internal quotations omitted); *see Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Based on this constitutional threshold, the Texas Code of Criminal Procedure requires that a "sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." TEX. CODE CRIM. PROC. art. 18.01(b). And no evidence obtained in violation of a constitutional provision or law "shall be admitted in evidence against the accused on the trial of any criminal case." *Id.* art. 38.23(a).

Probable cause for a search warrant exists when, under the totality of the circumstances presented in a peace officer's affidavit, there is a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). A magistrate's determination of probable cause "must be based on the facts contained within the four corners" of the affidavit. *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017). However, the magistrate "may draw inferences from the facts." *Id.*

The duty of a reviewing court is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed based on the four corners of the affidavit and reasonable inferences therefrom." *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013) (quoting *Gates*, 462 U.S. at 238–39). "When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made" and "should not invalidate a warrant by interpreting the affidavit in a hyper-technical rather than commonsense manner." *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022) ("[R]eviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process.").

But that deference is not unlimited. A reviewing court may not use this deference to sidestep the issue and undermine the very essence of this fundamental

liberty. Indeed, "a magistrate may not baselessly presume facts that the affidavit does not support." *Foreman*, 613 S.W.3d at 164. While "[n]either federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, . . . that probability cannot be based on mere conclusory statements of an affiant's belief." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *see also Jones v. State*, 833 S.W.2d 118, 124 (Tex. Crim. App. 1992) (statement is conclusory if it does not set forth underlying facts that led to conclusion).

"[S]ufficient information must be presented to the magistrate to allow that official to determine probable cause; [the magistrate's] action cannot be a mere ratification of the bare conclusions of others." *Baldwin*, 664 S.W.3d at 132 (quoting *Gates*, 462 U.S. at 239). Similarly, "[s]uspicion and conjecture do not constitute probable cause." *Id.* at 135 (magistrate erred by substituting officer's "generalized belief" for required evidentiary nexus). Conclusory statements give a magistrate no basis for making a judgment regarding probable cause. *McKissick v. State*, 209 S.W.3d 205, 216 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Gates*, 462 U.S. at 239).

Stated differently, a reviewing court must ensure that the constitutional right to be free from unreasonable government intrusion into one's own home is not trampled upon or diminished by mere conjecture, conclusory assertions, or rank speculation.

17

*Sufficiency of the Affidavit*

Skarritt argued below that Officer Moore's "affidavit contain[ed] only conclusory statements that items in a trailer taken to Skarritt's house [were] 'believed' to be stolen without any . . . basis [for] that conclusion." Skarritt asserted that such beliefs and speculation "cannot support probable cause."

In determining whether Officer Moore's affidavit provided a reasonable basis to find probable cause to search Skarritt's residence, we are "constrained to the four corners of the affidavit." *See Baldwin*, 664 S.W.3d at 130. We must determine whether the recited facts demonstrate that: (1) a specific offense was committed, (2) the property to be searched and the items to be seized constitute evidence of the offense or evidence that a particular person committed it, and (3) the evidence sought was located at or within the thing to be searched. *See* TEX. CODE CRIM. PROC. art. 18.01(c); *Baldwin*, 664 S.W.3d at 130. Additionally, the "facts stated in a search affidavit must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011) (internal quotations omitted).

Officer Moore stated in his affidavit that he had reason to believe that within Skarritt's residence would be located "evidence of the offense of Engaging in Organized criminal activity . . . by committing the offense of Theft

18

$30,000–$150,000 . . . pursuant to a continuing course of conduct on or about the dates of July May [sic] 06, 2020 continuing through October 28, 2020."

A person commits the offense of engaging in organized criminal activity if, "with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , the person commits or conspires to commit . . . theft." TEX. PEN. CODE § 71.02(a)(1). Theft is an unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a). Appropriation of property is unlawful if, inter alia, the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(2).

Thus, in order to support the search of Skarritt's residence, Officer Moore had to present facts supporting a conclusion that evidence of the underlying offense of theft would be found there. *See Baldwin*, 664 S.W.3d at 130; *Jackson v. State*, 314 S.W.3d 118, 124–25 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (establishing offense of engaging in organized criminal activity requires proof of commission of underlying offense with intent to act in combination).

We are mindful that our role in reviewing Officer Moore's warrant affidavit is to apply a totality-of-the-circumstances analysis, not to conduct a hyper-technical examination. *See Baldwin*, 664 S.W.3d at 130. We are likewise mindful that "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Duarte*, 389 S.W.3d at 354 (quoting *Gates*, 462 U.S. at 239).

19

Here, Officer Moore stated in his affidavit that he was involved in a multi-agency investigation into the theft and resale of tools and other merchandise from Home Depot and other stores. Throughout the affidavit, Officer Moore relied in large part on facts supplied by other officers and investigators. Observations reported to the affiant by others engaged in an investigation can constitute a reliable basis for issuing a warrant. *See Davis v. State*, 202 S.W.3d 149, 156 & n.20 (Tex. Crim. App. 2006). But the underlying circumstances must indicate a substantial basis for crediting the observations at each level. *See Serrano v. State*, 123 S.W.3d 53, 60 (Tex. App.—Austin 2003, pet. ref'd) ("Hearsay-upon-hearsay may be utilized to show probable cause if the underlying circumstances indicate a substantial basis for crediting the hearsay at each level.").

As applied here. Officer Moore asserted that HDORC (Colorado) Investigator T. Hare, at some point, "began investigating" Skarritt. According to Moore's affidavit, Hare reviewed Skarritt's Amazon.com page and opined it was "unlikely" that the merchandise he was selling was used or had been purchased through Home Depot Returns Logistics Centers. Also, according to Moore, Hare reviewed Skarritt's OfferUp account and opined that Skarritt was selling "items similarly *believed to have been stolen* from Home Depot stores." (Emphasis added.)[9]

---

[9]     Officer Moore actually began with a 2018 complaint by Black+Decker that Skarritt, through his business, Painting SBS, was an "unauthorized reseller" of

20

Officer Moore did not include in his affidavit when such events occurred. *See Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983) (holding that affidavit that failed to indicate when unlawful act occurred was insufficient to support issuance of search warrant). Instead, Moore simply stated a "belie[f]" that non-descript "items" were "stolen" based on it being "unlikely" that such items were used or purchased specifically through "Home Depot Returns Logistics Centers." To surmise that "items" are "stolen" merely because they are not used or specifically acquired from a Home Depot Returns Logistics Center is a bridge too far. Such items could certainly have been purchased from another retailer.

Moreover, Officer Moore stated in his affidavit that, based on his review of a police report from the TPD (Colorado), he learned about a 2019 shoplifting incident in Colorado, involving Michael Flores. Flores was arrested and the case was closed. Officer Moore noted that, in another TPD report, a tipster, Steven Gonzales, who is not otherwise identified and whose connection to the case or basis for personal knowledge are not stated, told Ranshaw, on a date not stated, that Flores was selling "stolen goods" to a "'Brandon' who lived on Wolff St." A conclusory tip with no shown basis of knowledge and temporal difficulties does not contribute to a finding of probable cause. *See Serrano*, 123 S.W.3d at 62.

---

Black+Decker products on Amazon.com. Setting aside that such complaint preceded the issuance of the warrant in this case by two years, there is not an allegation of theft stated.

Officer Moore further noted that Detective Ranshaw stated in another affidavit that, on April 4, 2020, WPD (Colorado) investigated "a felony theft case" in which a stolen vehicle was involved, and Flores was identified as the driver. At some point, WPD "went to an apartment and made contact with several people including [a] Jared Mitchell." Mitchell stated that Flores "sell[s] large amounts of stolen goods" to "Brandon Rose who lives in Arvada, Colorado." Mitchell is not identified, apart from his birthdate, and his connection to the case or basis for personal knowledge are not stated. Again, no timeframe for the tip is stated. *See id.*

Officer Moore's affidavit further states that he learned from Detective Ranshaw that, during surveillance of Rose's residence in Colorado on April 29, 2020, Flores was seen "pulling up to the residence" in a silver Kia and "exiting the vehicle and walking to the residence." Ranshaw "observed the back of the silver Kia to have several yellow DeWalt boxes which still had visible anti-theft devices on them." However, as the trial court concluded, Officer Moore did not state that Ranshaw provided any facts from any source that such items were unloaded from the Kia or delivered to Rose.

Additionally, Officer Moore noted that Detective Ranshaw stated in an affidavit that *seven days later*, on May 6, 2020, Rose "was seen via electronic surveillance loading several *boxes* into a trailer that was parked in his driveway."

22

(Emphasis added.) Again, as the trial court below concluded, Moore did not present any factual basis for concluding that the boxes contained stolen items.

Officer Moore further concluded that unidentified individuals "believed" or "suspected" that Rose was delivering "stolen" property or tools to Skarritt as follows:

> . . . . [HDORC Investigator] Bourne informed me that it was ***believed by Denver [HDORC Investigations] that the trailer would be used for delivering various stolen property*** *from Home Depot stores throughout the greater Denver, CO area to somewhere in Texas*. [Cahill] ran the license plate on the trailer and told me that he found that it was registered to a [Skarritt] with a registered address of [address] Katy, Harris County, Texas. [HDORC Investigations (Denver)] created a plan to conduct surveillance on [Rose] and any associates when they left with the trailer. I learned from [Bourne] that on Thursday, May 7, 2020 just before midnight, the surveillance observed that Rose finished loading the trailer up with new-in-box items and pulled out of his residence. . . . I learned from [Bourne] that they followed the trailer to [Skarritt's address]. . . . I obtained a copy of the video that was recorded and saw that several new-in-box items were being unloaded from the trailer and taken into the residence, past the point of the curtilage where the packages would leave camera view.
>
> I learned from both [Bourne] and Detective Ranshaw that on June 12, 2020, a surveillance team observed [Rose] and another white male, later identified as Reilly Hoffman depart from Rose's residence in Colorado in a Silver Chevrolet Suburban, pulling the white trailer belonging to [Skarritt] after loading the trailer full of power tools and other items ***suspected of being stolen Home Depot Merchandise***. On June 13, I along with [HDORC] investigators watched as the trailer was driven to Skarritt's residence . . . and ***suspected stolen merchandise was unloaded from the trailer into Skarritt's residence***. . . .
>
> Again on July 5, 2020, I received notification from [Bourne] and [Ranshaw] that Rose and Hoffman were traveling from Rose's residence to Texas in a silver Chevrolet Tahoe towing Skarritt's white trailer. I was informed by that based on their internal reports of thefts

23

within the time frame of the transport from Colorado to Texas and observations by the surveillance team, ***the trailer was believed to contain between $20,000 and $50,000 of stolen Home Depot merchandise***.

I was notified that by [Bourne] and [Ranshaw] that on September 10, 2020, Rose once again travelled from Arvada, CO to Katy, TX towing the trailer belonging to Skarritt ***which is believed to have contained stolen power tools*** . . . .

On October 27, 2020, I was notified by [HDORC Investigator] Cahill and [Ranshaw] that [Rose] and another white male had loaded the trailer belonging to [Skarritt] with a large quantity of new, in box, power tools, ***believed to be stolen*** from Colorado Home Depot stores, and that they had begun driving to Texas . . . .

(Emphasis added.)

Once again, as the trial court found, Officer Moore did not provide any basis to reasonably believe that the items placed in the trailer and transported to Skarritt's residence were stolen. Instead, the affidavit only provides generalized, unsupported statements that are insufficient to establish probable cause under Texas law. *See Baldwin*, 664 S.W.3d at 132, 135.

Nevertheless, the State contends that the magistrate could have reasonably inferred from the statements in the affidavit, showing a "transfer of a large quantity of new-in-box merchandise with the security devices still attached," that "there was a large scale theft and resale scheme occurring." But the record does not support the State's contention. At no point does Moore's affidavit demonstrate that any item with a "security device[] still attached" was transferred to Rose or Skarritt. And it

24

provides no factual basis for inferring that items that are new or numerous are necessarily stolen.

Although a magistrate may make reasonable inferences from the facts recited in the affidavit, he or she may not baselessly presume facts that the affidavit does not support. *Foreman*, 613 S.W.3d at 164. "When too many inferences must be drawn, the result is a tenuous rather than substantial basis for the issuance of a warrant." *Davis*, 202 S.W.3d at 157. "It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit. . . . It is quite another matter to read material information into an affidavit that does not otherwise appear on its face." *Cassias v. State*, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986).

In *Cassias*, the affiant sought a warrant to search a residence for contraband. 719 S.W.2d at 586–87. In his affidavit, the affiant stated that, based on a tip, surveillance was set up at the defendant's residence. *Id.* at 587. At some unspecified time, "activity [wa]s taking place in the garage area, where these people back their cars all the way into the garage, where a storage [sic] is visibly seen directly in back of the garage area." *Id.* And an individual was seen carrying "brick type packages believed to be marijuana." *Id.*

The Texas Court of Criminal Appeals held in *Cassias* that backing cars into a garage and the presence of storage described "only innocent facts." *Id.* at 589. That

"brick type packages believed to be marijuana" were seen at the premises was insufficient to support probable cause because the affiant did not state "who believed the packages to be marijuana, nor the basis for this belief." *Id.* The court held that "the pieces in the . . . affidavit [did] not fit neatly together to provide a substantial basis to support the magistrate's determination of probable cause." *Id.* at 590 (internal quotations omitted).

Similarly, here, Officer Moore's affidavit stacks inference upon inference and does not connect any theft or stolen property to Skarritt's residence. *See id.*[10] A nexus between property that Flores may have stolen in Colorado in April 2020 and boxes at Skarritt's Texas residence in October 2020 cannot just simply be inferred, as the State asks us to do. Rather, as in *Cassias,* any such inference in this case is too attenuated and thus fails to meet the constitutional threshold of probable cause.

Accordingly, having carefully considered the substance of the statements contained within the four corners of Officer Moore's affidavit, and the affidavit in its totality, we conclude that it fails to provide a substantial basis for reasonably concluding that stolen property would be located at Skarritt's residence. *See Gates*,

---

[10] *See, e.g.*, *State v. Klendworth*, No. 12-09-00409-CR, 2010 WL 3003624, at *6 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op., not designated for publication) (concluding that officer's suspicion that stolen property would be located at residence was insufficient to support probable cause because there were no facts placing stolen property at residence or showing that stolen property was taken to residence).

26

462 U.S. at 238–39; *Davis*, 202 S.W.3d at 157; *Cassias*, 719 S.W.2d at 590. The statements in Officer Moore's affidavit are therefore insufficient to establish probable cause—leaving no reasonable basis for a search of Skarritt's residence as required by the Fourth Amendment and its Texas equivalent. *See Foreman*, 613 S.W.3d at 163.

We therefore hold that the trial court did not err in granting Skarritt's motion to suppress all the evidence obtained as a result of the improper search warrant. *See Sims*, 569 S.W.3d at 640.

### *Material Omissions from the Affidavit*

Even if we were to conclude that Officer Moore's affidavit supported a finding of probable cause, we would still be required to uphold the trial court's order granting Skarritt's motion to suppress because the warrant affidavit is also violative of *Franks v. Delaware*, 438 U.S. 154 (1978).

As explained above, we must uphold the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *See Alford*, 400 S.W.3d at 929 ("[A]lthough the trial court made a conclusion of law denying appellant's motion to suppress under the community-caretaking exception to the warrant requirement, the appellate court was not limited to consideration of that legal theory and could uphold the trial court's ruling under any legal theory supported by the facts.").

27

In *Franks v. Delaware*, the Supreme Court of the United States held that a warrant is invalid under the Fourth Amendment if an affiant makes an affirmative misrepresentation in a warrant affidavit and the misrepresentation is material and necessary to establishing probable cause. *Islas v. State*, 562 S.W.3d 191, 196–97 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Franks*, 438 U.S. at 155–56).

Although the Texas Court of Criminal Appeals has not expressly applied *Franks* to material omissions, this Court and other courts of appeals in Texas have extended the *Franks* analysis as such. *See Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021) ("We have assumed that *Franks* applies to material omissions, but we have not decided the issue."); *Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("[T]he Fifth Circuit, along with other Texas Courts of Appeals, has concluded that allegations of material omissions are to be treated essentially the same as claims of material misstatements."); *see also Darby v. State*, 145 S.W.3d 714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.) ("Such omissions are treated essentially the same as claims of material misstatements.").[11]

---

[11] The State notes in its response to Skarritt's motion to suppress that the *Franks* "concept has been extended in both Texas and Federal law to extend to material omissions of fact from affidavits supporting search warrants." The State does not challenge this concept on appeal.

In deciding a *Franks* motion, we apply the same mixed standard of review applicable to an alleged probable-cause deficiency; however, we may look beyond the four corners of the warrant affidavit and consider evidence offered by the movant because this attack on the sufficiency of the affidavit arises from claims of falsity. *Jones v. State*, 338 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

This Court has held that a warrant is invalid under *Franks* if a defendant establishes by a preponderance of the evidence that (1) omissions of fact were made in executing a warrant affidavit, (2) such omissions were made knowingly, intentionally, or with a reckless disregard for the truth, and (3) the omitted facts would vitiate probable cause if included in the affidavit. *Volk v. State*, No. 01-07-00265-CR, 2008 WL 2854166, at *4 & n.4 (Tex. App.—Houston [1st Dist.] July 24, 2008, pet. ref'd) (mem. op., not designated for publication) (noting that Texas Court of Criminal Appeals has applied this reasoning in unpublished cases, e.g., *Ward v. State*, No. AP-74,695, 2007 WL 1492080, at *4 (Tex. Crim. App. May 23, 2007)).

Skarritt challenged Officer Moore's warrant affidavit below on the basis that Officer Moore omitted critical information, that he was personally aware of, based on his own surveillance and documents from Home Depot employees in the months prior to executing his affidavit, that Skarritt operated an online business as a tool reseller; that his company was registered with the State of Texas; and that Skarritt

and Rose had, using Skarritt's tax identification number, purchased hundreds of thousands of dollars in merchandise from Home Depot stores around the country and online during the relevant period. Skarritt argued that the omitted information was material because it led the magistrate to believe that Skarritt had no legitimate source of merchandise to supply his online business and, thus, that the items Rose shipped to Skarritt's address were stolen.

The State conceded in its response that this information was omitted from the warrant affidavit—but contended that it was "simply not relevant that some items may have been purchased lawfully."

However, Officer Moore admitted at the evidentiary hearing that when he executed his affidavit, in October 2020, he was aware that Skarritt's tax identification number had been on file at Home Depot since 2016 and listed him as a tool reseller; that it was Skarritt's business model to purchase clearance and "special buy" products and to sell them online; and that Skarritt had purchased $403,297.35 in products from Home Depot in 2019 and $268,670.36 in products from Home Depot in 2020.[12]

Moore also testified he was aware that, in an email dated July 7, 2020, HDORC Investigator Bourne had stated that Rose was seen buying clearance items

---

[12] The record contains copies of Home Depot's records; including a list of sales receipts from Home Depot Credit Services showing approximately $5,800.00 in purchases on July 7, 2020 alone.

in Home Depot stores located in Colorado, Wyoming, and Texas. In another email to Moore, dated July 13, 2020, Bourne again stated that clearance items were purchased at a Home Depot store in Key West, Florida. And, in an email to Moore dated September 22, 2020, DPS investigator R. Wolf further stated that Colorado investigators had followed Rose to several Home Depot and Lowe's locations and that "it appear[ed] that he was only buying clearance products." And, "[a]ll appeared to be legit purposes."[13]

Taken together, the evidence demonstrates that Officer Moore was not just aware, at the time he executed his affidavit, that Skarritt and Rose had purchased "some items" from Home Depot. Rather, Moore was aware that, during the relevant time, i.e., 2019 to 2020, Skarritt and Rose *had actually purchased almost $700,000.00 in items from Home Depot.*

Officer Moore admitted that he chose to omit this important information from his warrant affidavit, rather than allow the magistrate to weigh its importance in determining probable cause. Officer Moore also conceded that "nowhere in [his] affidavit" did he point to any stolen item being transported to Skarritt:

> [Defense Counsel]: All right. So the judge had no information available from you at the time you presented the search warrant affidavit that Skarritt and Rose were large purchasers of tools from Home Depot or anywhere else?

---

[13] The record includes copies of these emails as well.

31

| | |
|---|---|
| [Moore]: | No, sir. |
| [Defense Counsel]: | The only information that she had from you was that they were—and I'm going to summarize this—was that Brandon Rose was transporting tools that were believed to be stolen to Steve Skarritt? |
| [Moore]: | Yes, sir. |
| [Defense Counsel]: | You would agree with me that nowhere in your affidavit or report does it point to any particular item seen loaded into a trailer and transported to Skarritt as stolen, correct? |
| | . . . . |
| [Moore]: | —(indiscernible) possibly, yeah. Possibly, yeah. |

Accordingly, based on all of the foregoing, we conclude that Skarritt established that omissions of fact were made in executing the warrant affidavit and that such omissions were made knowingly, intentionally, or with a reckless disregard for the truth. *See Volk*, 2008 WL 2854166, at *4. Further, having concluded above that the affidavit wholly relied on the transfer of a large quantity of new items to establish probable cause to search Skarritt's residence, supplementing the affidavit with the omitted information would have vitiated any such probable cause. *See id*.; *see also State v. Verde*, 432 S.W.3d 475, 486–87 (Tex. App.—Texarkana 2014, pet. ref'd).

For this further reason, we hold that the trial court did not err in granting Skarritt's motion to suppress all the evidence obtained as a result of the search warrant. *See Sims*, 569 S.W.3d at 640.

We overrule the State's sole issue.

## Conclusion

We affirm the trial court's order granting Skarritt's motion to suppress.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).